GEORGE E. FROTHINGHAM *vs.* CHRISTOPHER SEYMOUR.

Hampshire. Sept. 21. — Oct. 22, 1875. AMES & DEVENS, JJ., absent.

A contract of partnership between two physicians provided as follows: that they should divide equally the gross receipts of their joint business in a certain town; that one might be absent six months in the year, or for any remaining portion of the year, and the other might be absent when he pleased, but neither, if absent more than two days at a time, should have any part of the income derived from the business of the other during that time; that before either party should withdraw from the contract, any horse or carriage purchased for the joint business should be sold, and the loss sustained by the party withdrawing; that if the party of the first part should withdraw and cease to do business in that town, without having shared the benefit of the business at all, then the other party should pay him a certain sum. *Held,* that, so long as the contract was executory, there was no evidence of any consideration, for the agreement to pay the sum mentioned, apparent on the face of the contract itself.

CONTRACT to recover $200 and damages for breach of the following agreement signed by the plaintiff and the defendant:

" These articles of agreement made this twentieth day of September, A. D. 1870, by and between George E. Frothingham, M. D., of the first part, and Christopher Seymour, of the second part, witnesseth, *In primis,* That the said parties mutually covenant and agree that they will practise and pursue together the profession and occupation of physician and surgeon in the town of Hinsdale, Mass., and that they will divide equally between them the gross receipts and income which may be derived from such joint business and the labors of both, such division of receipts and income to be made from time to time, as collected and obtained.

" *In secundis,* It is understood and agreed that the said party of the first part may, if he so desires, be absent from the said town of Hinsdale for the period of six months out of each and every twelve consecutive months, extending from October 1st to April 1st, or for any remaining portion of any year; but that when so absent from said field for more than two days at any one time, he shall have no part of the receipts and income derived from the business done by the said party of the second part during such period of absence. And it is also understood and agreed that the said party of the second part may be absent from said field of practice at any time or for any period he may desire, but that

in case of such absence for more than two days at any one time he shall have no part of the receipts and income derived from the business done by the said party of the first part during such period of absence. It is also understood and agreed that neither party is to have any part of the receipts or income derived from business done by the other party outside of said field of practice.

" And it is further understood and agreed that neither party shall alone contract debts or enter into any contract, bargain or obligation in the joint names of the parties hereto, but that they shall together agree upon and purchase such horses, carriages, medicines and so forth, as needed in carrying on this joint business, and each shall contribute to it in proportion to the time he is engaged, in the manner following : a fair estimate of the value of the articles above mentioned shall be made when the party of the first part actually commences to perform his part of the joint labor in connection with the party of the second part, and also at each time he leaves, and he, the party of the first part, shall pay one half the losses and expenses of doing business during the period that both parties are together doing the business, but no part of the losses and expenses of the business while the party of the second part is left alone in the business, and in the same manner shall the party of the second part be exempt from sharing the loss and expense of doing the business for the period while the party of the first part is alone doing the business and receiving its income ; and it is also agreed that before either party shall withdraw from this contract, any horse purchased for this joint business, or carriage bought for the same, shall be sold, and the loss sustained by the party retiring ; and if the party of the first part shall withdraw from this contract and cease to do business in Hinsdale, without having shared the benefit of this business at all, then the said Seymour shall pay the said party of the first part the sum of two hundred dollars, to be paid within two years from the date of this contract. In witness whereof the said parties have hereunto set their hands and seals this twentieth of September, 1870."

Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows :

There was evidence tending to show that the plaintiff, practising as a physician in Hinsdale, and having an established reputa-

tion and practice as such, being about to remove to Ann Arbor, in the State of Michigan, to engage in practice as a physician there, and in connection with his duties as demonstrator of anatomy in the university there, part of the year, sold to the defendant his real estate in Hinsdale, and certain personal property there, and introduced the defendant as a physician to succeed the plaintiff in the practice of medicine in Hinsdale. The defendant entered upon the business of a physician there, and continued in the same until the fall of 1870, when the plaintiff and defendant executed the contract declared on.

There was also evidence tending to show that the terms, on which the defendant succeeded to the plaintiff in practice, did not include a stipulation or promise on the part of the plaintiff that he would not continue in, or return to, the practice of medicine in Hinsdale; that about the time the contract was made, the plaintiff came to Hinsdale with the design of resuming practice there, and had attended to one case in Hinsdale before the contract, with the defendant's knowledge. The defendant testified that he did not know of such intention on the part of the plaintiff; that he did not communicate such intention to the defendant; but the defendant, from statements made by the plaintiff as to his business in Ann Arbor, fearing that he might so resume practice, and on account of representations of the plaintiff that they together in partnership might greatly increase the business, reluctantly entered into the agreement of partnership which the plaintiff urgently proposed. The parties contradicted each other as to whether the amount lost by the plaintiff upon the sale and disposition of certain articles of personal property was to be paid by the defendant as part of the terms of the defendant's succeeding the plaintiff in the practice of medicine, and whether said loss was taken into consideration in the stipulation in the contract of partnership that the defendant would pay the plaintiff $200, on his withdrawal before sharing in the business. There was also conflicting testimony as to the time when the plaintiff was to commence business under the partnership contract, the defendant testifying that the plaintiff was to commence precisely on April 1, 1871, and the plaintiff that it was to be about April 1, 1871, subject to his convenience in closing his lecture season at Ann Arbor. There was no communication between the parties from

the time of the execution of the contract until the defendant wrote to the plaintiff on April 7, 1871, stating that he saw that the plaintiff did not intend to return to practise for the summer, charging the plaintiff with fraud, with inducing him to enter into the contract, and declaring that, should the plaintiff return, he should decline to enter into partnership with him. To this letter the plaintiff replied on April 17, 1871, charging the defendant with treating him badly, and saying that the only thing else called for by the contract was the payment of $200. The plaintiff never came to practise under the contract, or offered so to do. The plaintiff claimed at the trial damages for the refusal of the defendant to take him in partnership, and also the $200 mentioned in the contract. There was no evidence of the plaintiff's withdrawal except as above stated, or of the refusal by the defendant to take the plaintiff as a partner.

The defendant requested the judge to rule " that the stipulation that the plaintiff, on withdrawal or ceasing to do business without having shared in the benefit at all, should be entitled to $200, is on the face of the contract not mutual, and is without consideration ; that the contract is by its terms for a partnership commencing immediately, and determinable at the will of the parties without damage to either party, except as provided in respect to horse and carriage ; that at least it is so determinable by the defendant ; that if the plaintiff did not enter into the contract in good faith, but with the intent not to go into business under it, and only to withdraw and claim the sum of $200, he cannot recover anything under the contract ; that if the plaintiff neglected to begin business under the contract at the time he agreed to begin, the defendant might afterwards refuse to receive the plaintiff as a partner and treat the contract as annulled ; that the plaintiff is not entitled to $200 as for his withdrawal before he was to commence business under the contract ; that if the defendant, before the plaintiff was to begin business under the contract, notified the plaintiff that he would not take him as a partner, it was still the duty of the plaintiff to be ready and willing to enter upon the partnership and offer to do so at the time he agreed to do so ; that if the plaintiff had a right to reëstablish himself in practice in Hinsdale, his withdrawal from the contract would be no benefit to the defendant, and in this respect there would be no

consideration for the $200 ; that the plaintiff cannot recover both the $200 as for withdrawal, and damages for refusal by the defendant to go on with the partnership."

The judge declined to give these instructions, and instructed the jury as follows:

" A contract, between a physician, who is in the possession of a medical and surgical practice in a specified district or town, with another physician, for a partnership in such practice providing that the physician in such possession shall pay to the physician $200, if he, the latter, shall withdraw from the contract, without having shared the benefit of that practice at all, is not a contract without consideration in law.

" If the plaintiff had, before the date of the written contract, been a physician and surgeon at Hinsdale and vicinity, having a reputation there in such profession, and was about to resume the business at Hinsdale, the agreement of the defendant to pay $200 if the plaintiff should withdraw from the contract and cease to do such business at Hinsdale, would be for a valid consideration, if the defendant never after did such business there."

The question of damages for the defendant's refusal, if any, was submitted to the jury with instructions, but the jury returned no damages on that account, but returned as damages the $200 mentioned in the contract, with interest, upon the direction of the presiding judge that the plaintiff was at any rate entitled to that sum and interest under the first instruction above given.

To these rulings, and to the refusal to instruct as requested, the defendant alleged exceptions.

*S. T. Spaulding,* for the defendant.

*A. J. Fargo,* for the plaintiff.

WELLS, J.   The contract provides that " if the party of the first part shall withdraw from this contract and cease to do business in Hinsdale, without having shared the benefit of this business at all, then the said Seymour shall pay the said party of the first part the sum of two hundred dollars."   This stipulation implies that the plaintiff might so withdraw at any time, even before entering upon any participation in the business contemplated.

At the trial, the court refused to rule, as requested by the defendant, " that the plaintiff is not entitled to $200, as for his

withdrawal before he was to commence business under the con-
tract," and did rule that a contract providing for such a with-
drawal was not a contract without consideration in law.

It would follow from these rulings that the plaintiff would be
entitled to recover the $200, if he had so withdrawn, without re-
gard to any consideration for the agreement to pay that sum, ex-
cept what was furnished in the written contract itself ; and it was
apparently so ruled at the trial.

Construing the contract in the mode suggested, and as it was
apparently construed at the trial, there would be no consideration
for the defendant's agreement to pay $200, so long as the con-
tract remained wholly executory.   There would no mutuality,
because the plaintiff was under no obligation to proceed or to do
anything in its execution ; and the contract itself conferred no
new rights or advantages upon the defendant, and recites none as
having been conferred.   If the defendant had in fact gained any
advantage from the making of the contract of partnership, by
reason of the previous reputation of the plaintiff and his with-
drawal from business in that vicinity ; or if it had appeared that
the contract was entered into by the defendant in view of such
expected advantage ; that might have furnished sufficient consid-
eration.

The second instruction, given at the request of the plaintiff,
being to that effect, was correct.   But the first instruction or
ruling before referred to authorized and required the jury to re-
turn a verdict for the $200, if the plaintiff had so withdrawn,
without regard to proof of any consideration except what was to
be derived from the written contract itself.   This was erroneous.
*Goward* v. *Waters*, 98 Mass. 596.        *Exceptions sustained.*