GEORGE E. FROTHINGHAM *vs.* CHRISTOPHER SEYMOUR.

Hampshire. Sept. 27, 1876. — Jan. 4, 1877. COLT & MORTON, JJ., absent.

A contract of partnership between two physicians provided that they should divide equally the gross receipts of their joint business in a certain town; that one might be absent six months in the year, or for any remaining portion of the year, and the other might be absent when he pleased, but neither, if absent more than two days at a time, should have any part of the income derived from the business of the other during that time; and that if the first should withdraw and cease to do business in that town, without having shared the benefit of the business at all, then the other should pay him a certain sum. Immediately after signing the contract, the first absented himself from the town; and before his return, and before he had shared in any benefit from the business, he received a letter from the other, declining to go on with the copartnership. *Held*, that this act of the other did not prevent the first from withdrawing from business in that town, and thereby becoming entitled to the sum named.

CONTRACT to recover $200 and damages for breach of the following agreement, signed by the plaintiff and the defendant:

" These articles of agreement, made this twentieth day of September, A, D. 1870, by and between George E. Frothingham, M. D., of the first part, and Christopher Seymour of the second part, witnesseth, *In primis*, That the said parties mutually covenant and agree that they will practise and pursue together the profession and occupation of physician and surgeon in the town of Hinsdale, Mass., and that they will divide equally between them the gross receipts and income which may be derived from

such joint business and the labors of both, such division of re-
ceipts and income to be made from time to time as collected and
obtained.

"*In secundis*, It is understood and agreed that the said party
of the first part may if he so desires be absent from the said
town of Hinsdale for the period of six months out of each and
every twelve consecutive months, extending from Oct. 1st to
April 1st, or for any remaining portion of any year, but that
when so absent from said field for more than two days at any
one time, he shall have no part of the receipts and income de-
rived from the business done by the said party of the second part
during such period of absence.  And it is also understood and
agreed that the said party of the second part may be absent from
said field of practice at any time or for any period he may desire,
but that in case of such absence for more than two days at any
one time he shall have no part of the receipts and income derived
from the business done by the said party of the first part during
such period of absence.  It is also understood and agreed that
neither party is to have any part of the receipts or income de-
rived from business done by the other party outside of said field
of practice.

"And it is further understood and agreed that neither party
shall alone contract debts or enter into any contract, bargain or
obligation in the joint names of the parties hereto, but that they
shall together agree upon and purchase such horses, carriages,
medicines and so forth, as needed in carrying on this joint busi-
ness, and each shall contribute to it in proportion to the time he
is engaged, in the manner following : a fair estimate of the value
of the articles above mentioned shall be made when the party
of the first part actually commences to perform his part of the
joint labor in connection with the party of the second part,
and also at each time he leaves, and he, the party of the first
part, shall pay one half the losses and expenses of doing busi-
ness during the period that both parties are together doing the
business, but no part of the losses and expenses of the business
while the party of the second part is left alone in the busi-
ness ; and in the same manner shall the party of the second part
be exempt from sharing the loss and expense of doing the busi-
ness for the period while the party of the first part is alone doing

the business and receiving its income; and it is also agreed that, before either party shall withdraw from this contract, any horse purchased for this joint business, or carriage bought for the same, shall be sold and the loss sustained by the party retiring; and if the party of the first part shall withdraw from this contract and cease to do business in Hinsdale without having shared the benefit of this business at all, then the said Seymour shall pay the said party of the first part the sum of two hun dred dollars, to be paid within two years from the date of this contract. In witness whereof, the said parties have hereunto set their hands and seals this twentieth of Sept. 1870."

After the former decision, reported 118 Mass. 489, the case was tried in the Superior Court, before *Wilkinson*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff, being required to elect on which branch of the contract he would proceed, elected to proceed for the recovery of the $200, and offered evidence tending to show a compliance with the terms and stipulations on which that recovery depended. The evidence tended to show that prior to 1869, the plaintiff had been a practising physician in Dalton, Chester and Hinsdale, in Berkshire County, and was accustomed to spend some four months each year at Ann Arbor, Michigan, lecturing at the medical school there ; that in 1869 he sold out his real estate, business and good will in Hinsdale to the defendant, and all his personal estate useful in the practice of his profession ; and the defendant thereupon established himself in medical practice in Hinsdale, and the plaintiff returned to Ann Arbor, and established himself in medical practice there ; and that, a few weeks before the date of the contract declared on, the plaintiff came from Ann Arbor to Hinsdale and proposed to the defendant to form a partnership, the result of which was the signing of the contract declared on, September 20, 1870, late at night, and the plaintiff left for Ann Arbor early in the morning, and remained there, without any intimation by letter or otherwise to the defendant of his intention to return to Hinsdale and go into business under the contract.

There was evidence further tending to show that on April 7, 1871, the defendant wrote and the plaintiff received in due course of mail a letter, in which the defendant stated that he

saw that the plaintiff did not intend to return to practise for the summer, charged the plaintiff with fraud, with inducing him to enter into the contract, and declaring that, should the plaintiff return, he should decline to enter into partnership with him.

As a consideration for the agreement to pay $200 upon the plaintiff's withdrawal from the contract and ceasing to do business in Hinsdale, the plaintiff offered evidence tending to show that his return to Hinsdale in the summer of 1870 was for the purpose of reëstablishing himself in business there with some other partners, if he did not form a partnership with the defendant, but there was no other stipulation given by the plaintiff to the defendant binding the former not to resume business in Hinsdale, except what is to be found in the written contract declared on.

The defendant contended that he was the first to withdraw from and put an end to the contract, which was done, as he contended, by the letter of April 7, 1871; and that the plaintiff could not, after that letter, elect to proceed for the recovery of the $200 as for a withdrawal on his part. The defendant asked the judge to rule as follows : " If the defendant, by his letter of April 7, 1871, signified to the plaintiff his determination not to go on with the partnership under the contract, and the plaintiff had not before that time signified his own withdrawal or intent to withdraw from the contract, the plaintiff could not afterwards on his part withdraw from the contract so as to be entitled to recover the $200 mentioned in the contract."

The judge refused so to rule. The jury returned a verdict for the plaintiff, for $200 and interest; and the defendant alleged exceptions to the refusal of the judge to rule as requested.

*S. T. Spaulding*, for the defendant.

*A. J. Fargo*, for the plaintiff.

AMES, J. The only question raised by this bill of exceptions is whether the instruction requested by the defendant ought to have been given. We are bound to presume that in all other respects the rulings of the presiding judge were correct.

It appears from the facts reported, that immediately after the signing of the contract the plaintiff took his departure for Michigan, and that he had not returned at the date of the defendant's letter to him. By the terms of the contract, he had a right to

be so absent for the term of six months, and his absence had not exceeded that period. Until his return, he had not shared, and by the terms of the contract could not have shared, in the benefit of the proposed business. The agreement in that event allowed him the alternative either to practise his profession at Hinsdale in copartnership with the defendant, or to withdraw entirely from that "field of practice" for the term of two years, in which latter event he was to be entitled to a pecuniary compensation from the defendant. The fact that the defendant, by his own act, had rendered one part of his alternative promise impossible of fulfilment, does not relieve him from the other. *Drake* v. *White*, 117 Mass. 10. It was not in his power, by his own separate act, to cancel the contract, or deprive the plaintiff of any of his rights under it. If the plaintiff withdrew from practice at that place and for the specified term of time, it was a sufficient consideration for the defendant's promise to pay him a prescribed compensation. The former decision in this case, reported 118 Mass. 489, affirmed this proposition ; and ordered a new trial, only because one of the instructions given at the first trial had appeared to assume that a sufficient consideration on the part of the plaintiff was shown by the contract itself, without regard to his subsequent acts. The partnership having been rendered impossible by the act of the defendant, there was no occasion for the plaintiff to give notice of his intention to resort to the other clause of the contract. It follows that the instruction requested was properly refused, and that the defend ant's *Exceptions are overruled.*